AMITY LEATHER PRODUCTS CO. v. HAL-
VORSEN et al.

No. 4756.

Circuit Court of Appeals, Seventh Circuit.
April 18, 1933.

Rehearing Denied May 23, 1933.

John W. Michael, of Milwaukee, Wis.,
for appellant.

Charles B. Cannon, Clarence E. Threedy,
and Cornelius R. Palmer, all of Chicago, Ill.,
E. H. Hallows, of Milwaukee, Wis., and Ol-
iver M. Loomis, of South Bend, Ind., for ap-
pellees.

Before ALSCHULER and SPARKS,
Circuit Judges, and LINDLEY, District
Judge.

ALSCHULER, Circuit Judge.

The appeal is from a decree finding in-
fringement of the Halvorsen et al. patents—
No. 1,452,421, April 17, 1923, and No. 1,-
665,099, April 3, 1928—the first being for
improvement in leather stamping machines
and the second for a work holder for such
machines.

By stipulation the cause was set down to
be heard upon bill and answer upon the sole
issue of infringement of the hereinafter men-
tioned claims.

We first consider No. 1,452,421, of which
claims 1, 2, 6, and 7 are involved. Claim 6,
the broadest, is: "6. In a stamping machine,

a vertically movable supporting rod, a type
carrier adjustably carried by said rod, a
handle pivotally supported by said type car-
rier, and means formed upon said handle for
cooperation with said rod to lock the type
carrier in adjusted positions."

Patent Figs. 3 and 8 will help to under-
stand the claims:

Fig. 8 shows in detail the handle or lever
23, about which the controversy mainly re-
volves, pivoted to the type carrier at 24,
and locking means 25 formed on the handle.

The application as applicable to this con-
troversy specifies that it relates to a ma-
chine for printing or stamping gold leaf
lettering upon leather articles by the hot
printing process, by providing "a novel form
of lever construction for moving the type
carrier into type receiving or unloading posi-
tion, or into stamping position, which co-
operates with the support of the type carrier
for locking the latter in adjusted positions
and also to provide means for electrically
heating the type carrier and the type carried
thereby, as heated type is necessary to obtain
the best results in gold lettering or stamping
on leather or analogous material."

The issue here relates to the mechanism at
the lower end of vertical movable rod 5,
whereby the type carrying member 15 is held
in locked position for printing or in raised

position for changing the type in the type carrier. The lever or handle is pivotally attached to the type carrier, and to move the carrier from its locked printing position the handle is first moved to release its positive engagement with the rod, and is then lifted, bringing the carrier forward and upward, by means of its hinged attachment to the rod, into position for loading and unloading the type, whereupon by a pivotal movement of the handle the carrier is locked into unloading position. The action of the handle is reversed for again bringing the carrier into printing position. The locking is effected by a projection 25 (Fig. 8) formed upon the handle and engaging the rod.

With infringement the only issue, we come at once to a consideration of the alleged infringing device, which is designed to bring about the same result as that of the patent, viz., gold stamping or printing upon leather by means of pressure upon heated type supported in an appropriate carrier. Appellant's machine has a perpendicular sliding rod, upon the lower end of which is a device for holding the type carrier when it is in position for printing. This device is in the form of a tenon integral with the rod, adapted to receive a mortised piece which is attached to the upper side of the type carrier. Positively attached to and extending rearwardly from the carrier is a smaller rod or bolt which passes slidably and rotatably through a hole in the tenon.

For printing position the carrier is slid rearwardly onto the tenon and positively held against movement on the tenon by the turning of a thumb set screw, which is on the right upper end of the type carrier and projecting diagonally into and through the mortise wall and setting against the tenon. There is also a thumb screw at the opposite end of the carrier and one in the front of it, designed to secure the type within the carrier.

When it is desired to withdraw the type carrier from printing position the thumb set screw is released, and the carrier is then pulled forward wholly free from the tenon, being then held upon the bolt. Here it may be laterally rotated either way upon the bolt. The object, however, is not complete rotation of the carrier, but to position it so its lower side will be upwardly disposed for loading or unloading the type. When brought into this position the carrier is pushed backward so that a small attached pin projecting rearwardly from the carrier becomes inserted into a hole in the face of the rod, thus holding the carrier in loading position.

For again bringing the carrier into printing position the action is reversed: the carrier is drawn backward far enough to release the pin from engagement with the rod, and the carrier is thereupon manually revolved on the bolt until the type side is down, whereupon the carrier is slid back into engagement with the tenon of the rod, and the thumb set screw is turned until it sets against the tenon.

The contention of appellees is that the above-mentioned thumb set screw, together with the holding pin of appellant's type carrier, are the equivalent of appellees' handle "pivotally supported by said type carrier, and means formed upon said handle for cooperation with said rod to lock the type carrier in adjusted positions." The contention is determinative of the case as to this patent.

It seems to us that altogether too much must be presumed in favor of the patent device in order to accord validity to this contention. Appellant's thumb set screw must be found to be the equivalent of the pivoted handle with its locking means thereon. We do not think the record affords evidence of this.

The thumb set screw is no more to be regarded as a handle than either or both the two other thumb screws attached to appellant's type carrier, neither of which has any function whatever in the locking of the type carrier. To be sure, any one of the three might be taken hold of in order to raise or lower the carrier. Indeed, the operator, with his hands protected (as might well be expected when handling the hot carrier and type), would most likely take hold of the carrier itself and thus make the necessary positioning movements.

The fact that appellant's carrier is capable of being raised and lowered and moved into position does not of itself indicate that the means employed therefor are those of the patent. As well might it be said that, if a small block or other support resting on the work table were temporarily placed under the carrier to hold it in its type-exchanging position, this support with the carrier would be the equivalent of the pivoted handle—a contention which we would deem quite absurd.

But if any one or more of the three thumb screws could be regarded as the equivalent of the handle of the patent, there is here absent the element of each one of the claims of its pivotal support by the type carrier. None of these thumb screws is pivotally supported by the carrier, but each is attached to it as

any screw would be; and, further, no one of them has any means "formed upon the handle" for cooperation with the rod to lock the type carrier in adjusted positions.

But if it might be said of the thumb set screw that it operates like the handle of the patent in locking the carrier into position for printing, it nevertheless has no function whatever in holding it in locked position when raised for changing the type. The pin alone locks it when in this position, and the thumb set screw has nothing whatever to do with that function; whereas in the patent the dominating feature is a pivoted handle which not only raises and lowers the carrier, but has means thereon which positively lock it in both positions.

We are satisfied that appellant's device is thus wanting in essential elements of the claims, and that infringement of this patent does not appear.

■■■ No. 1,665,099. This patent is for "a novel improvement in work holders for machines for embossing or printing on various types of goods, and more particularly to machines specifically designed for printing or embossing leather goods such as shown in Letters Patent No. 1,452,421." The specification states: "The principal object of our invention is to provide a novel work holder including a gauge board for squaring up the 'work' and holding same in proper relation to the printing die of such machine, said gauge board having novel spring clamps or holders thereon for holding down the 'work' upon the gauge board, and also having a novel scale bar with an adjustable arm extending at right angles to the scale bar, whereby when the scale bar and arm have been properly 'set' on the gauge board, articles of the same size and shape when successively placed on the gauge board with adjacent corners touching the scale bar and arm, may each receive an impression from the die in the same relative location."

Claims 10 and 11 are alone in issue. Claim 10 is: "10. A gauge board for presses having evenly spaced coorthogonal lines marked thereon, means for mounting said board on a press whereby the intersection of the middle lines of the coorthogonal lines may be disposed on the axis of the plunger of the press."

Claim 11 is like 10 with the addition of the words "and means for holding work on said gauge board relative to said lines."

We reproduce Fig. 3 of the patent, which shows the gauge board with appliances thereon for holding the work:

The specification further states: "For printing or embossing on relatively flat objects, our novel work holder is provided, consisting of a gauge board 4, preferably square or rectangular in shape, adapted to be bolted or otherwise removably secured upon the top of table 3. Gauge board 4 is preferably marked similarly to ordinary 'plotting' paper, with two sets of evenly spaced orthogonal lines, extending at right angles to each other, the said lines being graduated from the center of the board 4 to each side thereon. The point of intersection of the two 'zero' lines is preferably disposed in vertical alignment with the axis of plunger 6 and die 7."

Claim 10 has to do only with the board itself and the means for mounting it upon the press so that the intersection of the middle lines of the board shall be on the axis of the press plunger (in the other patent called "rod"). The only means shown in the patent for so mounting the gauge board appears in patent Fig. 2, being screws from below which engage the board, holding it in positive position in said relation to the axis of the plunger.

The alleged infringing machine shows the same gauge board, with the same coorthogonal lines. But instead of the fixed mounting of the board as in Fig. 2 of the patent, appellant's board is slidable back and forth, with the axis of the plunger in registry with the sliding board's middle longitudinal line.

Appellees contend that the fixed position of the board is permissive only, and that the claim by employing the word "may" admits of such a mounting of the board wherein it

is slidable. If the claim admits of this slidability, we find difficulty in understanding the purpose of the coorthogonal lines when the board is moved so that the intersection of the middle lines would be out of registry with the axis of the plunger. While this intersecting point was out of such registry with the plunger axis it could not well be employed for the proper placing of the work upon the board. Fig. 3 seems to make provision for alignment of the work on the board in such manner as might obviate the need of sliding the board. The bar 10 is movable longitudinally of the board to any desired place thereon by means of thumb screws $10^a$ placed into holes $4^x$, the slotted openings in the ears $10^b$ permitting more accurate adjustment of the bar. This seems to indicate an intent that the greater range thus permitted be attained by this means rather than by the slidability of the board. Appellees doubtless make this contention because in their commercial machine the board is slidably mounted. The test of infringement is, of course, the patent and not the patentee's commercial construction.

But assuming the correctness of appellant's contention that the patent contemplates a fixed mounting of the board, infringement is not escaped by making the board slidable when it is considered that appellant's machine has below its board a thumb screw by the mere turning of which the movement of the board may be arrested and the board positively held at any point in its line of travel, including, of course, the point of intersection of the middle lines. Having such ready and apparent means for making the structure respond to this element of the claim, and so to the entire claim, appellant does not succeed in evading this claim of the patent.

With claim 10 thus clearly reading on appellant's machine, and in the absence of any issue of validity, and with no evidence bearing on the state of the prior art whereby the scope of the claim might be limited, and under the stipulated single issue of infringement, we see no escape from the conclusion that claim 10 was infringed.

Infringement of claim 11 depends on whether appellant's machine additionally shows "means for holding work on said gauge board relative to said lines." That it has means to such end is not disputed. Indeed, the gauge board could scarcely function in connection with a printing press unless it had some means for accurately placing and holding the work upon it during the printing process. While this may also be said of the device of the patent, yet without any issue

here of invalidity, or evidence of such prior art or use as might limit the claim, it seems clear that the means for that purpose employed in appellant's device, however radically different from that shown in the patent, supplies in appellant's machine the element of "means" as set forth in the last clause of the claim, and makes this claim readable on appellant's machine.

It follows that under this record the court properly held claims 10 and 11 to have been infringed.

The decree of the District Court is reversed as to patent No. 1,452,421, and sustained as to claims 10 and 11 of patent No. 1,665,099, and the cause is remanded to the District Court with direction to enter a decree in accordance herewith. Each party shall pay one-half of the taxable costs of the litigation.